Donald Wayne WARREN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–10–00047–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 8, 2011.

Discretionary Review Refused Feb. 8, 2012.

---

Michael P. Fosher, The Lyric Center, Houston, TX, for Appellant.

Erin Craig, Assistant District Attorney, Houston, TX, for The State of Texas.

Panel consists of Justices JENNINGS, HIGLEY, and BROWN.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Donald Wayne Warren, was charged by information with driving while intoxicated with an enhancement paragraph alleging that appellant had an open container of an alcoholic beverage in his immediate possession at the time of the offense.[1] Appellant pleaded not guilty to the charged offense and not true to the enhancement. A jury found appellant guilty as charged. The trial court found the enhancement paragraph true and assessed punishment at 180 days in county jail and a fine of $2,000. The trial court also suspended appellant's sentence of con-

---

1. *See* TEX. PENAL CODE ANN. § 49.04(a), (c) (Vernon 2011).

finement and placed him on community supervision for 18 months. In four issues, appellant argues: (1) the evidence was legally and factually insufficient to establish there was a temporal link between his intoxication and his driving; (2) the trial court abused its discretion by denying his motion to suppress certain statements made to a police officer; and (3) he received ineffective assistance of counsel.

We affirm.

## Background

Lee Nolen was working at a Denny's restaurant in Spring, Texas from 6:00 p.m. on February 7, 2009 until 6:00 a.m. the next morning. According to Nolen, appellant entered around 12:30 a.m. and sat down at the counter. At some point, appellant asked Nolen for a phone book so he could call a wrecker service to get his truck out of the ditch outside the restaurant.

Deputy D. Drake from the Harris County Sheriff's Department testified that he was dispatched to the Denny's for a minor accident investigation. He testified that he arrived at five minutes after midnight. When he arrived at the scene, an officer identified as Deputy Terranova was present at the scene.[2] Appellant was also there, standing by the driver's side door to his truck.

Deputy Drake spoke to Deputy Terranova first and then spoke to appellant. When he approached appellant, Deputy Drake asked how the accident had occurred. At the time, appellant had bloodshot eyes, he was slurring his speech, and Deputy Drake could smell alcohol on his breath.

Deputy Drake asked appellant "how he had come to know about the crash," and appellant responded that he drove his truck into the ditch. Deputy Drake asked appellant where he was coming from, and appellant responded that he was coming from his home on Cypresswood. Deputy Drake then asked appellant what his intended destination was, and appellant responded that his destination was his home. When Deputy Drake asked appellant for his driver's license, appellant "started fumbling through his wallet," dropping business cards out of it. Appellant then looked back up and asked Deputy Drake what he had just asked him for. After he obtained the license from appellant, Deputy Drake asked appellant if he had been drinking. Appellant responded that he had "drunk some." When asked how many, appellant "referred to it as a few."

While Deputy Drake was talking to appellant, appellant demanded that Deputy Drake call a person identified as J.R. Appellant asserted J.R. was a deputy with the sheriff's office, and Deputy Drake testified that he knew a J.R. that worked for the sheriff's office.

In his investigation, Deputy Drake determined that the truck had not sustained any damage other than some minor scraping to the underside of the truck. The hood of appellant's truck was still warm, indicating to Deputy Drake that the truck had been driven recently. He also testified that the inside of the cab was warmer than the outside temperature of 60 degrees Fahrenheit. Inside appellant's truck, he discovered a plastic cup containing an unidentified alcoholic drink, some of which had spilled onto the passenger's seat of the truck.

When he got out of Deputy Drake's patrol car for the field sobriety test, appellant was unsteady on his feet and asked repeatedly what he was being charged

---

2. Deputy Terranova did not testify at the trial.

with. Prior to administering the field sobriety test, Deputy Drake asked appellant about any medications he was taking or physical problems he might have. Appellant said he was not taking any type of medications and indicated that he did not have any physical problems or difficulties. At the time appellant was asking what he was being charged with, appellant told Deputy Drake that Deputy Drake could not prove that he was driving the truck and that he had "beat one of these already."

Deputy Drake performed the field sobriety test on appellant and observed all six clues on the horizontal gaze nystagmus test, all eight clues on the walk-and-turn test, and three of the four clues on the one-leg stand test. Deputy Drake subsequently arrested appellant. At the police station, appellant refused to provide a breath sample for testing and also refused to participate in a second field sobriety test.

### Temporal Link between Driving and Intoxication

In his first and second issues, appellant argues that, despite the evidence establishing his intoxication when Deputy Drake arrived, the evidence is legally and factually insufficient to establish that appellant was intoxicated while he was driving.

### A. Standard of Review

This Court reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49, 52–55 (Tex. App.-Houston [1st Dist.] 2010, pet. filed) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virgi-*

*nia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See id.* at 912, 926. Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex.Crim. App.2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 n. 11, 320, 99 S.Ct. at 2786, 2789 n. 11, 2789; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, the "cumulative

force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex.Crim.App.2006).

## B. Analysis

■ "A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2011). The definition of intoxicated, as it applies to this case, is "not having the normal use of mental or physical faculties by reason of the introduction of alcohol ... into the body." TEX. PENAL CODE ANN. § 49.01(2)(A) (Vernon 2011). Based on the statutory requirements, the State was required to prove that appellant was intoxicated *at the time* he was operating the motor vehicle in a public place. *See id.* § 49.04(a).

Appellant does not challenge the evidence that he was driving the truck at the time of the accident. Nor does he challenge the evidence that he was driving in a public place. We are left to determine, then, whether the evidence is sufficient to show that appellant was intoxicated at the time he was driving. Appellant argues there is no evidence establishing how much time had elapsed from when the accident occurred to when Deputy Drake arrived, suggesting his intoxication could have occurred after the accident happened.

■ In order to support a finding that the defendant was intoxicated while operating a motor vehicle, "there must be a temporal link between the a [*sic*] defendant's intoxication and his driving." *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim.App.2010). Such a finding can be supported by direct or circumstantial evidence. *See id.* (holding conviction can be supported solely by circumstantial evidence). "Being intoxicated at the scene of

a traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident, and the inference of causation is even stronger when the accident is a one-car collision with an inanimate object." *Id.*

Similar to the defendant in *Kuciemba*, appellant drove his car into a ditch and was found intoxicated at the scene of the accident. Deputy Drake testified that the hood of appellant's truck was still warm, indicating to him that the truck had been recently driven. He also testified that the inside of the cab was warmer than the outside temperature of 60 degrees Fahrenheit. Inside appellant's truck, he discovered a plastic cup containing an unidentified alcoholic drink, some of which had spilled onto the passenger's seat of the truck.

Even without knowing the time span between when the accident occurred and when Deputy Drake arrived, this evidence, viewed in the light most favorable to the verdict, is sufficient to support a finding by the jury that appellant was intoxicated while he was driving. The warmth of the hood and cab of the truck is some evidence that the accident occurred a relatively short time before Deputy Drake arrived. *See Rawls v. State*, 167 Tex.Crim. 106, 318 S.W.2d 662, 663 (1958) (considering warmth of motor as proof that vehicle had recently been driven by defendant); *see also Kuciemba*, 310 S.W.3d at 464 n. 1 (Meyers, J., dissenting) (indicating testimony of officer that engine was warm would allow jury to determine defendant recently drove vehicle). Similarly, Deputy Drake testified that the cab of the truck was warmer than the outside air.

Additionally, Deputy Drake found an open container of alcohol in the cab of appellant's truck and saw that some of the drink had spilled onto the passenger's seat of the truck. The jury could have reason-

ably determined that the spill occurred at the time of the accident, meaning that appellant had the alcoholic drink with him as he was driving. The presence of an open container of alcohol in the vehicle driven by appellant is some evidence that he was drinking while driving. *See Kimball v. State*, 24 S.W.3d 555, 559–60 (Tex. App.-Waco 2000, no pet.) (considering presence of open container of beer in determining whether defendant was intoxicated while driving); *Sneed v. State*, 964 S.W.2d 764, 766 (Tex.App.-Texarkana 1998, no pet.) (considering presence of empty containers of alcohol in determining whether defendant was intoxicated while driving). From this, the jury could have reasonably inferred that appellant was intoxicated while driving.

Appellant discusses how there was some explanation—other than intoxication—as to why appellant may have performed poorly on the field sobriety test. He also asserts that the video of him at the sheriff's station "does not show an intoxicated person." Assuming without deciding that these arguments are correct, they are unavailing. It is the responsibility of the jury as fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton*, 235 S.W.3d at 778. All of these assertions that appellant relies on were conflicts in the testimony for the jury to resolve, and our standard of review requires us to review the evidence in the light most favorable to the jury's verdict. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

Based on the foregoing, we hold that the evidence was sufficient to establish that appellant was intoxicated at the time he was driving in a public place. We overrule appellant's first and second issues.

## Motion to Suppress

In his third issue, appellant argues the trial court abused its discretion by denying his motion to suppress certain statements made to a police officer.

### A. Standard of review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex.Crim. App.2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673. But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Id.*

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex.Crim.App. 2007).

### B. Analysis

Appellant argues there were nine instances that violated his *Miranda* rights,

the Fifth Amendment of the United States Constitution, section 3 of article 38.22 of the Texas Code of Criminal Procedure, and section 10 of article 1 of the Texas Constitution.[3] *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3 (Vernon 2005); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Because appellant draws no distinction between these legal authorities and because the majority of appellant's other legal authority focuses on a defendant's *Miranda* rights, we treat this issue as a complaint of violation of his *Miranda* rights.[4] *See Resendez v. State*, 306 S.W.3d 308, 315 (Tex.Crim.App.2009) (treating argument concerning *Miranda* rights, United States Constitution, Texas Constitution, and Article 28.22 of Texas Code of Criminal Procedure all as argument that police officer failed to *Mirandize* defendant). The nine instances he complains about are as follows:

1. Deputy Drake asked appellant "how he had come to know about the crash," and appellant responded that he drove his truck into the ditch.

2. Deputy Drake asked appellant where he was coming from, and appellant responded that he was coming from his home on Cypresswood. Deputy Drake then asked appellant what his intended destination was, and appellant responded that his destination was his home.

3. Deputy Drake asked appellant for his driver's license. Appellant "started fumbling through his wallet," dropping business cards out of it. Appellant then looked back up and asked Deputy Drake what he had just asked him for.

4. Deputy Drake asked appellant if he had been drinking. Appellant responded that he had "drunk some." When asked how many, appellant "referred to it as a few."

5. While Deputy Drake was talking to appellant, appellant demanded that Deputy Drake call a person identified as J.R. Appellant asserted J.R. was a deputy with the sheriff's department.

6. Prior to administering the field sobriety test, Deputy Drake asked appellant about any medications he was taking or physical problems he might have. Appellant said he was not taking any type of medications and indicated that he did not have any physical problems or difficulties.

7. When he got out of Deputy Drake's patrol car for the field sobriety test, appellant was unsteady on his feet and asked repeatedly what he was being charged with.

---

3. Appellant also complains about five statements that were only mentioned during the suppression hearing, arguing they "should have been suppressed from the suppression hearing." The purpose of a suppression hearing is for the trial court to determine the merits of the motion to suppress. TEX.CODE CRIM. PROC. ANN. art. 28.01, § 1(6) (Vernon 2006). Appellant fails to explain how the trial court was expected to determine what statements should have been suppressed without first knowing what the statements were. Nor does he explain how he was harmed by these statements being introduced outside the presence of the jury.

4. Appellant does quote section 3 of article 38.22 of the Texas Code of Criminal Procedure in his brief. This section prohibits the introduction in a criminal proceeding of statements of an accused obtained as a result of custodial interrogation unless certain requirements are met. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3 (Vernon 2005). This rule's application is premised on the determination that the defendant was subject to custodial interrogation, which we review below.

8. At the time appellant was asking what he was being charged with, appellant told Deputy Drake that Deputy Drake couldn't prove that he was driving the truck.

9. Appellant then told Deputy Drake, "I beat one of these already."

■ The *Miranda* safeguards come into play when a person is (1) in custody and (2) subject to interrogation—that is, subject to express questioning or its functional equivalent "that the police should know are reasonably likely to elicit an incriminating response from the subject." *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *see also Jones v. State*, 795 S.W.2d 171, 174–75 (Tex.Crim.App.1990) (citing *Innis*). Before determining whether appellant was in custody, however, it is relevant to our inquiry to determine first whether any of the complained of statements were obtained as a result of interrogation as it has been defined by the United States Supreme Court and the Texas Court of Criminal Appeals.

■ Not all questioning by police can be classified as "interrogation." *Jones*, 795 S.W.2d at 174. Examples of when a defendant is not considered subject to interrogation include:

- routine inquiries;
- questions incident to booking;
- broad general questions such as "what happened" upon arrival at the scene of a crime;
- questions mandated by public safety concerns, such as "where did you hide the weapon" when the weapon has just been hidden in the immediate vicinity;
- asking whether the defendant will take a blood alcohol test or repeatedly asking the defendant to give a breath sample;

- police practices seeking only physical evidence, not testimonial confessions of guilt, such as instructions and questions incident to a field sobriety test; and
- statements volunteered by the defendant without any compelling influence.

*Id.* at 174–76 & n. 3 (citing Ringel, Searches and Seizures, Arrests and Confessions § 27.4 (1987); *Chadwick v. State*, 766 S.W.2d 819, 821 (Tex.App.-Dallas 1988), *aff'd*, 795 S.W.2d 177 (Tex.Crim. App.1990); *Innis*, 446 U.S. at 300, 100 S.Ct. at 1689).

■ We hold that the question in the first instance—asking appellant how he had come to know about the crash—was a broad general question and, hence, did not constitute interrogation. *See id.* at 174 n. 3.

■ The questions in the next two instances—asking where appellant was coming from and going to and asking for appellant's driver's license—are routine questions asked at a traffic accident. *Massie v. State*, 744 S.W.2d 314, 316–17 (Tex.App.-Dallas 1988, writ ref'd) (holding asking defendant where he was going was not interrogation); *see also Jones*, 795 S.W.2d at 174 n. 3 (citing *Massie* for same). They are not questions "reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301, 100 S.Ct. at 1689–90. Moreover, appellant's response to the question in the third instance—asking Deputy Drake what he had just asked for—was not a response to the question. Instead, it was a question volunteered by appellant, which is not subject to *Miranda* warnings. *See Jones*, 795 S.W.2d at 176.

■ We hold that part of the question in the sixth instance—asking appellant about any physical problems he might have—is incident to administering a field

sobriety test. *Id.* at 175–76. In order to assess a field sobriety test's efficacy in determining intoxication, it is beneficial for the officer to know if there are factors other than intoxication that would inhibit the suspect's ability to perform the required tasks. *See Ellis v. State,* 86 S.W.3d 759, 761 (Tex.App.-Waco 2002, pet. ref'd) (indicating that vision problems or medical conditions could create "false positive" in field sobriety test). Because it is incident to administering a field sobriety test, it does not constitute interrogation. *See Jones,* 795 S.W.2d at 175–76.

■ We hold the statements in the fifth, seventh, eighth, and ninth instances—appellant telling Deputy Drake to call J.R., asking repeatedly what he was being charged with, asserting Deputy Drake could not prove he was driving the truck, and asserting that he had "beat one of these already"—were statements volunteered by appellant without any compelling influence and did not constitute interrogation. *See id.* at 176.

■ Moreover, part of what appellant complains about in the third and seventh instances were descriptions of his demeanor—fumbling through his wallet, dropping business cards out of the wallet, and being unsteady on his feet. An officer's description of a person's demeanor does not implicate the person's *Miranda* rights or other protections against self-incrimination. *Id.* at 175–76.

■ The closest call concerns the question in the fourth instance and part of the sixth instance—Deputy Drake's asking appellant how many drinks appellant had consumed and whether he was taking any medications. Nevertheless, even if these did constitute interrogation, we hold appellant was not in custody at the time these question were asked.

In *Berkemer,* a police officer pulled over a driver that was driving erratically. *Berkemer v. McCarty,* 468 U.S. 420, 423, 104 S.Ct. 3138, 3141, 82 L.Ed.2d 317 (1984). The officer asked the driver to get out of the car, noticed that the driver was having difficulty standing, and decided immediately that the driver would be charged with a traffic offense. *Id.* The officer conducted a field sobriety test, which the driver failed. *Id.* The officer asked the driver whether he had been using intoxicants, and the driver responded he had consumed two beers and had smoked several joints of marijuana "a short time before." *Id.* The Supreme Court held that asking the driver whether he had been using intoxicants after the driver had failed a field sobriety test did not constitute custodial interrogation. *Id.* at 442, 104 S.Ct. at 3151–52.

Similarly, in *Shpikula,* the officer pulled over a driver that had been driving in excess of 90 miles an hour and weaving between several lanes of traffic. *Shpikula v. State,* 68 S.W.3d 212, 215 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). Upon observation, the officer determined that the driver appeared intoxicated, and a strong odor of alcohol was coming from the car. *Id.* When the officer asked the driver for identification, the driver handed him his entire wallet. *Id.* at 216. The driver could not maintain his balance without holding onto a fixed object. *Id.* The officer then asked the driver whether he had been drinking, and the driver responded he had had a few drinks with friends earlier in the evening. *Id.* The officer then conducted a field sobriety test, which the driver failed, and placed him under arrest. *Id.* Relying on *Berkemer,* we held that the driver's *Miranda* rights had not been violated prior to his arrest. *Id.* at 218–19.

The situation in this case is comparable to those in *Berkemer* and *Shpikula.*

When he approached appellant, Deputy Drake asked how the accident had occurred. At the time, appellant had bloodshot eyes, he was slurring his speech, and Deputy Drake could smell alcohol on his breath. Deputy Drake asked appellant to recount the events of the crash, and subsequently asked where appellant was coming from and going. Deputy Drake then asked for appellant's driver's license. After he obtained the license from appellant, Deputy Drake asked appellant if he had been drinking and how many drinks he had had. Prior to administering the field sobriety test, Deputy Drake asked appellant if he was taking any medication.

We hold that this chain of events did not convert the investigation into an arrest. Appellant was not subject to a custodial interrogation because he was not in custody at the time Deputy Drake asked appellant how many drinks he had consumed and whether he was taking any medication.

We overrule appellant's third issue.

### Ineffective Assistance of Counsel

In his fourth issue, appellant argues that he received ineffective assistance of counsel.

#### A. Standard of Review

The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. *See* U.S. Const. amend. VI. To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674

(1984); *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex.Crim.App.2005).

An appellant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim. App.1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* We presume that a counsel's conduct falls within the wide range of reasonable professional assistance, and we will find a counsel's performance deficient only if the conduct is so outrageous that no competent attorney would have engaged in it. *Andrews*, 159 S.W.3d at 101.

In most ineffective-assistance-of-counsel cases, the record on direct appeal is not developed and does not adequately reflect the alleged failings of trial counsel. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim.App.1998). This is particularly true when the alleged deficiencies are matters of omission and not of commission that are shown in the record. *Id.* In such cases, the record is best developed in a hearing on a motion for new trial or on application for a writ of habeas corpus. *Batiste v. State*, 217 S.W.3d 74, 83 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

#### B. Analysis

Appellant argues he received ineffective assistance due to his attorney's failure to object to (1) Deputy Drake's testimony regarding the portion of the field sobriety test where he conducted horizontal gaze nystagmus test and (2) the trial court's admonishment that the deputy could not mention that the appellant wanted to talk to a lawyer.

Appellant did not file a motion for new trial complaining about ineffective assistance of counsel to develop a record establishing counsel's reasons for the al-

leged conduct. Because the record is silent, we cannot determine whether trial counsel's inaction was grounded in sound trial strategy. *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994). In the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *See Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim.App.2001); *see also Gamble v. State,* 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.) (presuming reasonable trial strategy supported failure to object in face of silent record). Accordingly, we review each of the claims of error to determine whether a strategic motivation can be imagined.

### 1. Testimony concerning the horizontal gaze nystagmus test

Appellant argues his attorney should have objected to Deputy Drake's testimony regarding the horizontal gaze nystagmus test first because Deputy Drake was not qualified as an expert on that test and second because the testimony was speculative and prejudicial due to the fact that there was not a video corroborating the testimony regarding the test.

Appellant acknowledges that Deputy Drake testified that he was "certified as a standardized field sobriety testing instructor." Nevertheless, appellant complains that Deputy Drake "did not specifically testify that he was certified to administer the Horizontal Gaze Nystagmus test." Appellant relies on *Ellis* as support for the proposition that such specific testimony was required. *See Ellis v. State,* 86 S.W.3d 759, 760–61 (Tex.App.-Waco 2002, pet. ref'd). We disagree with appellant's interpretation of *Ellis.*

In *Ellis,* the testimony concerning the officer's qualifications to conduct the field sobriety test focused, in part, specifically on whether the officer had obtained certification to administer the horizontal gaze nystagmus test. *Id.* at 761. The officer testified that he had taken the course but had not received the certification because he had not yet completed other requirements for certification. *Id.* The Waco court of appeals held that certification was required in order to be qualified as an expert and held that the trial court erred by allowing the officer to testify in this regard. *Id.*

The *Ellis* case, then, concerns the situation where the evidence disproves that the officer is qualified to testify as an expert on a certain matter. *Id.* Those are not the facts of this case. Deputy Drake testified that he was certified as a standardized field sobriety testing instructor. Nothing in the evidence disproved this testimony or in any other way called into doubt his qualifications to testify as an expert. Without any proof that Deputy Drake was not qualified to testify as an expert, appellant has failed to meet his burden of showing that he received ineffective assistance of counsel for the failure to object to Deputy Drake's expert testimony. *See Thompson,* 9 S.W.3d at 808 (holding any allegation of ineffectiveness must be firmly founded in record).

Appellant also argues that his attorney should have objected because Deputy Drake's testimony was speculative and prejudicial due to the fact that there was not a video corroborating the testimony regarding the test. Corroborating video evidence is not required. *See Annis v. State,* 578 S.W.2d 406, 407 (Tex.Crim.App. 1979) (holding arresting officer's opinion testimony of intoxication, alone, is sufficient to support conviction).

### 2. Exclusion of evidence regarding talking to a lawyer

Appellant also argues that his attorney should have objected to the trial

court's requirement that the State could not mention that appellant asked to speak to a lawyer.

The record reflects that, after he was arrested, appellant was taken to the Cypresswood sheriff's station, was placed under video surveillance, and was read the statutorily-required warning concerning giving a breath test. Appellant refused to provide a breath test and refused to participate in another field sobriety test at the station. During the suppression hearing, it was represented that, at some point while he was at the station, appellant either asked to speak with a lawyer or stated that he was not going to perform the field sobriety test without a lawyer. The trial court ruled that appellant's statements concerning a lawyer could not be presented to the jury.

Appellant complains that a request for counsel was "admissible and relevant to show that [appellant] was not intoxicated, i.e., that he was coherent and had the 'normal use of mental or physical faculties.'" Appellant fails to explain or provide any support for how requesting an attorney could constitute proof that he was not intoxicated.

▮ Moreover, it is well established that it is generally improper to introduce evidence of an accused invoking his or her right to counsel because it could be construed adversely to a defendant and may improperly be considered as an inference of guilt. *See Hardie v. State*, 807 S.W.2d 319, 322 (Tex.Crim.App.1991) (citing *Miranda*, 384 U.S. at 468 n. 37, 86 S.Ct. at 1625 n. 37). Accordingly, it would have been entirely reasonable for appellant's trial counsel to believe that whatever benefit might have been derived by establishing that appellant invoked his right to counsel would have been outweighed by the substantial risk that the jury would have used such a statement as some acknowledgment

of appellant's guilt. *See Garcia*, 57 S.W.3d at 440 (holding that, in absence of direct evidence of counsel's reasons for challenged conduct, appellate court will assume strategic motivation if any can be imagined).

We overrule appellant's fourth issue.

### Conclusion

We affirm the judgment of the trial court.