**Opinion issued June 25, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00078-CR

_____

**DON QUIROZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 2**
**McLennan County, Texas**
**Trial Court Case No. 20110260CR2**

---

**MEMORANDUM OPINION**

A jury convicted Don Quiroz of driving while intoxicated.[1] The trial court

assessed punishment at 120 days' confinement and a $500 fine. In a single issue,

---

[1]    TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2012).

Quiroz contends that the evidence is legally insufficient to prove that he operated a vehicle at a time when he was intoxicated. We affirm the trial court's judgment.[2]

**Background**

On the evening of June 26, 2010, Quiroz was traveling on Interstate 35 to visit his sister when a tire on his pickup truck blew out. He took the first exit, stopped to examine the tire, decided to drive a short distance farther, and eventually stopped on the roadside near a dollar store in Bruceville-Eddy. Quiroz testified that he had a six-pack of beer and a small bottle of tequila with him before he arrived at the store.

Officer D. Edwards, of the Bruceville-Eddy Police Department at the time of Quiroz's arrest, saw Quiroz's truck parked on the road at the dollar store location at approximately 10:30 p.m. Edwards testified that he was watching "that intersection" on that night, and had been through the intersection a few minutes earlier and "there was no vehicle there." Approximately three minutes later, after he circled the block and went through the intersection again, Quiroz's truck was there. Edwards did not see Quiroz arrive at that location. He noticed the truck because of the time; "we try to check out those vehicles that hour of night, just to

---

[2] Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by order of the Texas Supreme Court pursuant to its docket equalization efforts. *See* Misc. Docket No. 12-9008 (Tex. Jan. 10, 2012); *see also* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

2

make sure that things are okay and everybody is safe." When Edwards first saw the truck, Quiroz was sitting in the driver's seat with the driver's side door closed. Edwards testified that the keys were in the ignition, but the truck was not running.[3] The passenger-side front tire was "totally disintegrated," and the rim was dented as if Quiroz had been driving on it for several miles.

Edwards started recording Quiroz with his in-dash camera when Quiroz got out of the truck. The video was admitted into evidence, without objection, and played before the jury. As Edwards testified, the video showed Quiroz getting out of the truck, walking to the tailgate, and standing there. Edwards described Quiroz as "a little droggy." His "eyes were already bloodshot, he was already sweating, and the alcohol was coming all about him." Edward testified, and the video shows, that Quiroz carried a bottle that he had retrieved from the truck. Edwards described the bottle as "a whiskey bottle," and testified that a little under half the alcohol remained in the bottle. Edwards also observed Quiroz with a beer can in his hand.

When Edwards first asked Quiroz what he had to drink, Quiroz answered that he had nothing to drink. The second time Edwards asked the question, Quiroz answered that he had been parked there for twenty minutes. Quiroz later said that he had been parked there for three hours to three-and-a-half hours. When Edwards stated "No, you haven't been there for that long," Quiroz answered "No, I

---

[3] On cross-examination, Edwards testified that his written report did not state that the keys were in the ignition.

haven't." Edwards also testified that, at one point in the video, Quiroz stated "that he had been sitting on the side of the road about a half mile down [from the dollar store] for the past three hours."

Quiroz's sister arrived at the dollar store at approximately the same time that Edwards approached Quiroz. Edwards testified that she said that Quiroz was lost, was on the highway, and was stranded in Mother Neff Park, and that the video showed Quiroz stating that his sister called him and told him to meet her at the dollar store location. Edwards also testified that Quiroz's sister stated on the video that Quiroz "was at Mother Neff Park," which other evidence indicated "was way the other direction away from" the dollar store location.

Edwards testified he and a second officer searched the truck and the surrounding area. They found an unopened beer can with the plastic six-pack ring around it, the open can that Quiroz had been holding, the bottle that he took from the truck, and diabetes medication. They did not find any empty beer cans.

According to Edwards, Quiroz appeared to be intoxicated based on the way he exited his vehicle, "the alcohol that was coming off of his breath and off of his person," and his aggressive manner. Edwards stated, based on his training and experience, that it would take more than a minute or two for person to show signs of intoxication after consuming alcohol. Quiroz refused to perform field sobriety tests. Quiroz testified that he told Edwards, "you can give me a Breathalyzer," but

4

"you can see also how much I've been consuming here." A blood sample taken that night showed that Quiroz's blood alcohol concentration was .21.

Edwards further testified that, in his opinion, Quiroz was operating his vehicle shortly before he got out of his truck. Edwards based his opinion on seeing Quiroz in the driver's seat with the keys in the vehicle. Edwards, however, did not see Quiroz operate the truck.

Quiroz testified that he was at the dollar store for a long period of time before Edwards arrived. According to Quiroz, his tire blew out on Interstate 35 at approximately 8:00 p.m. He then took the first exit and stopped at the side of the road to examine the tire. The tread was completely off the tire, but it still had air. He decided to drive farther and, when "the air just came out of the tire," he parked at "the first right-hand side of the road." He disagreed with Edwards's testimony that he was only at the dollar store location for two to three minutes. He explained:

> No, that's—that's very not true. The first thing when I—when I stopped, I got out of the driver's seat, and I went to the back of my truck. And I started searching out for a tire or a jack, which in both respects I couldn't find neither one. There was a tire in there, but you could plainly see it wasn't to that vehicle. . . . But anyway, I didn't have a tire or a jack. So I got out of the vehicle, a little upset, and just sat myself down and popped me open a beer.

He also testified that the bottle shown in the video and from which he drank was not a whiskey bottle but was a Jose Cuervo tequila bottle and that he consumed the alcohol missing from that bottle "in Bruceville-Eddy at that spot."

5

He testified that he sat on the truck tailgate, listening to music and waiting for his sister at the dollar store location. During that time, he drank four sixteen-ounce beers and whatever was missing from the tequila bottle. He did not start, move, or operate his truck after he started drinking, and he had not had anything to drink before arriving at the dollar store. He further testified that the keys were in the truck bed and not in the ignition, and that the door to the vehicle was open when Edwards arrived. According to Quiroz, he went to the front of the truck only to change a CD and had rigged the radio to work without the keys in the ignition.

Quiroz also testified that immediately after the blowout, he called his sister so she could come assist him and that she needed directions. Quiroz's sister testified that, when he first called about 8:40 p.m., he was in front of a dollar store and that they spoke several times that evening because she did not know the area. On cross-examination, she conceded that she could not see where Quiroz was when they talked on the phone and that he could have been up the road from the dollar store and driven from that location to meet her at the dollar store.

### Sufficiency of the Evidence

In a single issue, Quiroz contends that the evidence is legally insufficient to support the jury's verdict that he was driving while intoxicated. A person commits the offense of driving while intoxicated if the person (1) was intoxicated (2) while operating a motor vehicle (3) in a public place. *See* TEX. PENAL CODE ANN.

6

§ 49.04(a) (West Supp. 2012). Quiroz does not contest that he was intoxicated or in a public place when arrested. He asserts that the State failed to show that he operated a motor vehicle while intoxicated and failed to link his operation of the vehicle to a time when he was intoxicated. We disagree.

## A. Standard of Review

Under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2789 (1979), evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the offense was proven beyond a reasonable doubt. *See Jackson v. State*, No. 10-12-00285-CR, 2013 WL 563323, at *3 (Tex. App.—Waco Feb. 14, 2013, no pet.) (mem. op.) (setting out standard for sufficiency-of-evidence review under *Jackson v. Virginia*). This standard gives full play to the responsibility of the factfinder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319. 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see also Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008) (stating that jury is sole judge of credibility of witnesses and weight to give their testimony). An appellate court presumes that the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided the resolution is

rational. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *see Clayton*, 235 S.W.3d at 778 (stating that reviewing court "presume[s] that the factfinder resolved the conflicts in favor of the prosecution and therefore defer[s] to that determination.").

In reviewing the record, direct evidence and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. In determining the sufficiency of the evidence, a reviewing court examines "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* (quoting *Hooper v. State,* 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt, even if every fact does not "point directly and independently to the guilt of the accused." *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

## B.    Quiroz's operation of a motor vehicle while intoxicated

The State was required to show that Quiroz was intoxicated at the time he operated a vehicle. The Court of Criminal Appeals has concluded that "operation does not necessarily involve driving" and that "[t]o find operation . . . the totality of the circumstances must demonstrate that the defendant took action to affect the

functioning of his vehicle in a manner that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995); *see Hearne v. State*, 80 S.W.3d 677, 680 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding that reviewing court looks at totality of circumstances surrounding entire incident in question to ascertain whether operation occurred); *Bailey v. State*, No. 10-06-00297-CR, 2008 WL 2687094, at \*2 (Tex. App.—Waco July 9, 2008, no pet.) (mem. op., not designated for publication) (stating that "we must use a totality of the circumstances approach to determine whether [defendant] was operating her motor vehicle while intoxicated"). Because "operating a motor vehicle" is broadly defined, any action that is more than mere preparation toward operating the vehicle is "an 'action to affect the functioning of [the] vehicle in a manner that would enable the vehicle's use.'" *Strong v. State,* 87 S.W.3d 206, 216 (Tex. App.—Dallas 2002, pet. ref'd), *abrogated on other grounds*, *Pfeiffer v. State*, 363 S.W.3d 594 (Tex. Crim. App. 2012) (quoting *Barton v. State*, 882 S.W.2d 456, 459 (Tex. App.—Dallas 1994, no pet.)).

According to Quiroz, the only evidence of operating a vehicle at the time of the stop—i.e., the time when he was intoxicated—were the keys in the ignition, and this evidence shows only "mere preparation" to operate his truck. He also asserts that the only evidence of the time of alcohol consumption was his testimony that he drank the beer and tequila "while laid up on the side of the road." The State,

9

therefore, failed to show that, during the time he was operating the truck—before arriving at the dollar store location—he was intoxicated.

In order to support a finding that a defendant was intoxicated while operating a motor vehicle, there must be a temporal link between the defendant's intoxication and his driving. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010);[4] *Warren v. State*, 377 S.W.3d 9, 14 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Such a conviction "can be supported solely by circumstantial evidence." *Kuciemba*, 310 S.W.3d at 462 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)); *see Warren*, 377 S.W.3d at 14 (stating that finding can be supported by direct or circumstantial evidence). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor." *Guevara*, 152 S.W.3d at 49.

Quiroz testified that he drank four sixteen-ounce beers and some tequila that evening and admitted that he was intoxicated. Quiroz also admitted to driving his vehicle to the location where Officer Edwards found him in his truck. Edwards's

---

[4] Quiroz cites *Johnson v. State*, 517 S.W.2d 536 (Tex. Crim. App. 1975), to support the necessity of a link between operation of a vehicle and intoxication. He suggests that proof of that link "cannot be supplied by inference and supposition," citing *Sharp v. State*, 296 S.W.2d 932, 933 (Tex. Crim. App. 1957), and *Gamboa v. State*, 481 S.W.2d 423, 426 (Tex. Crim. App. 1972). The *Kuciemba* Court, however, emphasized that circumstantial evidence may establish this necessary link. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010) (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)); *see Scillitani v. State*, 343 S.W.3d 914, 918 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (concluding that *Kuciemba* court impliedly overruled *Johnson* because analysis in *Kuciemba* was contrary to analysis in *Johnson*).

testimony and the video support a jury finding of a temporal link between Quiroz's intoxication and his driving. Edwards found Quiroz's vehicle stopped at the side of the road at approximately 10:30 p.m. and testified that Quiroz was sitting in the driver's seat with the keys in the ignition. According to Edwards's testimony, the vehicle had been at that location for no more than three minutes. At the time of the arrest, Quiroz gave several different answers when asked how long he had been at the dollar store location. At one point, he agreed with Edwards that he had not been there for three hours and also stated that he had been sitting about a half mile down the road for three hours. The evidence also indicates that Quiroz's sister could not find his location, and had called Quiroz and told him to meet her.

Additionally, Officer Edwards testified that he observed Quiroz leave the truck with a bottle that he had retrieved from the truck. *See Warren*, 377 S.W.3d at 15 (stating that presence of open container of alcohol in vehicle driven by defendant is some evidence he was drinking while driving); *see also Kimball v. State*, 24 S.W.3d 555, 559–60 (Tex. App.—Waco 2000, no pet.) (considering presence of open container of beer in determining whether defendant was intoxicated while driving). When Edwards first approached Quiroz, his eyes were bloodshot "and the alcohol was coming all about him." Finally, the blood sample taken that night showed that Quiroz's blood alcohol concentration was .21. *See Kuciemba*, 310 S.W.3d at 463 (stating that blood alcohol level of more than twice

11

legal limit of .08 supported inference that defendant "had been intoxicated for quite a while").

The evidence, viewed in the light most favorable to the verdict, is sufficient to support the jury finding that Quiroz was driving while intoxicated. First, and most importantly, the jury could have accepted Officer Edwards's testimony that Quiroz arrived on the scene no more than three minutes before Edwards arrived. Because it was undisputed that Quiroz was intoxicated at the time, it would be reasonable to conclude that he had been intoxicated three minutes earlier when he drove to the dollar store. Second, the jury could have resolved the conflicts in the testimony and reasonably concluded that the following series of events occurred that night: Quiroz pulled over to the side of the road about a half-mile from the dollar store around 8:40 p.m. when he called his sister; he remained there drinking while his sister drove to the area and tried to locate his vehicle; he then drove to the dollar store around 10:30 p.m. to make it easier for her to locate him and had been at the store for only a few minutes before Edwards arrived. The jury may have reasonably inferred that Quiroz was intoxicated when he last operated his truck to drive it the last half mile to the dollar store. Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support the conviction.

12

## Conclusion

Having overruled Quiroz's issue on appeal, we affirm the judgment of the trial court.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).