Ashley Mere **HOWARD**, Appellant

v.

The **STATE** of Texas, Appellee

NO. 01-16-00120-CR

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued April 25, 2017

Discretionary Review Refused November 15, 2017

Cynthia Rayfield-Aguilar, 401 College Street, Suite 260, Montgomery, TX 77356, for Appellant.

Kim Ogg, District Attorney—Harris County, 1201 Franklin, Suite 600, Houston, TX 77002, Eric Kugler, Assistant District Attorney, Harris County, Texas, 1201 Franklin, Suite 600, Houston, TX 77002, for Appellee.

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

## OPINION

Harvey Brown, Justice

Ashley Howard and her two friends stole merchandise from a department store, fled in a getaway car, and led the police on a high-speed chase, which came to an abrupt end when they ran a red light and crashed into a vehicle passing through the intersection, killing the driver, Rosalba Quezada. Howard was indicted for felony murder. She was convicted and sentenced to 35 years' confinement and fined $10,000. In two issues, Howard contends that the trial court erred by (1) instructing the jury to find her guilty of *felony* murder upon a predicate finding that her friends caused Quezada's death while acting in furtherance of a *misdemeanor* conspiracy and (2) denying her motion to suppress a videotape of a statement she made to an officer while at the hospital in police custody. We affirm.

## Background

It was undisputed at trial that Howard and her friend, Racquel Gonzalez, agreed to steal polo shirts from a department store. They recruited another friend, Shiquinta Franklin, to help them steal the shirts by driving Howard's vehicle as the getaway car.

Howard picked up Gonzalez and Franklin, and they drove to the department store. Howard and Gonzalez entered the store while Franklin waited in the driver's seat of the car. Howard and Gonzalez proceeded to grab sixteen shirts off a clothing

rack[1] and run out of the store, setting off the theft-prevention sensors. They jumped into the getaway car and told Franklin to go. Franklin sped out of the parking lot, and, almost immediately, the police began to pursue them.

In an attempt to evade arrest, they led the police on a dangerous, high-speed chase on and off the highway and through residential areas, during which they ran stop signs, reached speeds of over 100 miles per hour, and passed other vehicles on the inside shoulder.

They eventually came to a red light at an intersection on the feeder road. Gonzalez testified that she told Franklin to stop the car but that Howard told Franklin to "keep going" because she "had too much to lose." Franklin likewise testified that Howard told her to "go, go, go" through the red light. Franklin ran the red light at over sixty miles per hour and crashed into another vehicle passing through the intersection, killing the vehicle's driver, Rosalba Quezada, and injuring her three children, one seriously.

Howard attempted to flee the accident scene on foot but was apprehended by the police and taken to the hospital. At the hospital, she was questioned by Officer R. Klementich. Howard admitted that she, Gonzalez, and Franklin had conspired to steal the shirts and then tried to evade arrest when the police began to pursue them.

Howard was indicted for felony murder, tried, and convicted. She appeals.

## Charge Error

In her first issue, Howard contends that the trial court instructed the jury to convict under an erroneous theory of liability. The charge's second application paragraph instructed the jury to find Howard guilty of felony murder upon a predicate finding that Franklin caused Quezada's death while acting in furtherance of a conspiracy with Howard to commit state jail felony theft. Howard argues that a conviction for felony murder cannot be based on a conspiracy to commit state jail felony theft because such a conspiracy is not itself a felony but rather a misdemeanor. The State responds that a conviction for felony murder can be based on a conspiracy to commit a state jail felony under Section 7.02(b) of the Penal Code, which establishes a conspiracy theory of party liability. According to the State, under this statute, Howard may be convicted for Franklin's felony murder of Quezada because Franklin committed the felony murder while driving the getaway car in furtherance of her and Howard's conspiracy to commit felony theft.

## A. Applicable law and standard of review

Under the Code of Criminal Procedure, the trial court must "deliver to the jury ... a written charge distinctly setting forth the law applicable to the case...." Tex. Code Crim. Proc. art. 36.14. "The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case...." *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). In reviewing a jury-charge issue, we determine whether error exists and, if so, whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Ryser v. State*, 453 S.W.3d 17, 27 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

1. The department store security camera videotaped Howard taking six shirts and Gonzalez taking ten. The total value of the sixteen shirts was $2,200.

**B. The charge correctly applied the law to the facts**

■■■ Howard was prosecuted for felony murder. Section 19.02(b)(3) of the Penal Code sets forth the offense of felony murder. It provides that a person commits felony murder if he "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(3).

The State's theory of liability, however, was not based on Section 19.02(b)(3). Instead, it was based on Section 7.02(b), which establishes a conspiracy theory of party liability. *Id.* § 7.02(b). Section 7.02(b) provides that "[i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy." *Id.*; *see Leal v. State*, No. 01-14-00972-CR, 2016 WL 796950, at *6 (Tex. App.—Houston [1st Dist.] Mar. 1, 2016, pet. ref'd) (mem. op., not designated for publication) ("Under Section 7.02(b), all the conspirators intending to commit one felony may be convicted for any other felony actually committed in furtherance of the intended

felony if such felony was one that should have been anticipated in the attempt to carry out the intended felony.").

The conspiracy here was a conspiracy to commit state jail felony theft. Section 31.03(a) of the Penal Code defines "theft" as the unlawful appropriation of property with the intent to deprive the owner of the property. TEX. PENAL CODE § 31.03(a). At the time that Howard and Franklin conspired to steal the shirts, the offense of theft was a state jail felony if the value of the property was $1,500 or more but less than $30,000.[2] The value of the shirts they conspired to steal was $2,200. Therefore, their conspiracy was a conspiracy to commit state jail felony theft.[3]

Franklin is guilty of felony murder because she caused Quezada's death by committing an act clearly dangerous to human life while in immediate flight from the commission of felony theft. *Id.* § 19.02(b)(3). Because Howard conspired to commit state jail felony theft with Franklin, and Franklin committed felony murder while acting in furtherance of the theft conspiracy, and Franklin's felony murder should have been anticipated by Howard as a result of carrying out of the conspiracy, Howard, as Franklin's co-conspirator, is guilty of the felony murder of Quezada as well. *Id.* § 7.02(b); *see Lee v. State*, No. 01-07-00992-CR, 2009 WL 1562861, at *4 (Tex. App.—Houston [1st Dist.] June 4, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that, "under the law of parties, appellant became criminally responsible for the of-

---

**2.** *See* Act of June 20, 2015, 84th Leg., R.S., ch. 1251, § 10, 2015 Tex. Sess. Law Serv. 1251 (codified at TEX. PENAL CODE § 31.03(e)(4)(A)). Theft is now a state jail felony if "the value of the property stole is $2,500 or more but less than $30,000 ...." TEX. PENAL CODE § 31.03(e)(4)(A).

**3.** The offense of conspiracy to commit state jail felony theft would be a Class A misde-

meanor. *See id.* § 15.02(d) (offense of criminal conspiracy "is one category lower than the most serious felony that is the object of the conspiracy, and if the most serious felony that is the object of the conspiracy is a state jail felony, the offense is a Class A misdemeanor").

fense of felony murder by conspiring to rob the complainant knowing that his friend was carrying a firearm.").

Conviction under Section 7.02(b) only requires a conspiracy to commit a felony; it does not also require that the conspiracy itself constitute a felony. *See* TEX. PENAL CODE § 7.02(b). Thus, Howard may be guilty of felony murder even though the conspiracy itself, had she been charged with that offense, would have been a misdemeanor. *See id.* § 15.02(d) (conspiracy to commit state jail felony theft is misdemeanor).

■ The charge's second application paragraph tracked the language of Section 7.02(b), instructing the jury to find Howard guilty upon finding that Franklin caused Quezada's death while acting in furtherance of a conspiracy to commit felony theft.[4] Specifically, the application paragraph instructed the jury to find Howard guilty of felony murder upon predicate findings that:

- Howard and Franklin conspired to commit felony theft;
- Howard and Franklin carried out their conspiracy to commit felony theft;
- while in the course of committing the felony theft, Franklin committed an act clearly dangerous to human life that caused the death of Rosalba Quezada—i.e., she ran a red light while attempting to evade arrest and crashed her vehicle into the vehicle driven by Quezada, causing Quezada's death; and

- Franklin's felony murder of Quezada was committed in furtherance of the conspiracy to commit felony theft and should have been anticipated by Howard as a result of carrying out the conspiracy.[5]

Thus, the second application paragraph did not permit a misdemeanor conspiracy to serve as the underlying offense for convicting Howard of felony murder under the felony murder statute. Rather, it permitted a felony murder committed by Howard's co-conspirator, Franklin, to serve as the basis for convicting Howard of felony murder under the conspiracy-liability statute. Therefore, the second application paragraph correctly applied the law to the facts. Accordingly, we overrule Howard's first issue.

## Motion to Suppress

In her second issue, Howard contends that the trial court erred by denying her

---

4. The second application paragraph stated: "If you find from the evidence beyond a reasonable doubt that the defendant, Ashley Mere Howard, and Racquel Gonzalez and/or Shiquinta Franklin entered into an agreement to commit the felony offense of theft of property owned by Leon Bauer, and pursuant to that agreement, if any, they did carry out their conspiracy and that in Harris County, Texas, on or about the 23rd day of May, 2013, while in the course of committing such theft of property owned by Leon Bauer, Racquel Gonzalez and/or Shiquinta Franklin committed an act clearly dangerous to human life that caused the death of Rosalba Quezada by running a red light while evading arrest or detention and causing her motor vehicle to strike the motor vehicle driven by Rosalba Quezada, and

that the felony murder of Rosalba Quezada was committed in furtherance of the conspiracy and was an offense that should have been anticipated by the defendant as a result of carrying out the conspiracy ... then you will find the defendant guilty of felony murder, as charged in the indictment."

5. The abstract portion of the charge instructed the jury that "[a] person commits the offense of felony murder if she commits a felony, other than manslaughter, and in the course of and in the furtherance of the commission, or in immediate flight from the commission, she commits an act clearly dangerous to human life that causes the death of an individual."

motion to suppress a videotape of the statement she made to Officer Klementich while at the hospital in police custody. It is undisputed that Klementich did not begin the interview by reading Howard her *Miranda* warnings. Instead, he began with several minutes of questioning. Then he paused, warned her, obtained a waiver, and continued questioning. The videotape presented to the jury started at the point in the interview when Klementich began to read Howard her *Miranda* warnings; it did not include her pre-warning statements.

Howard argues that the videotape was inadmissible because Klementich deliberately employed a two-step "question first, warn later" interrogation strategy without taking any "curative measures" before Howard made her post-warning statements. The State responds that the videotape was admissible because Klementich's pre-warning questioning was inadvertent and Howard knowingly and voluntarily waived her rights before making her post-warning statements, which were the only statements included as evidence.

## A. Applicable law and standard of review

Under Texas criminal law, a statement made by a defendant during a custodial interrogation is inadmissible unless two elements are satisfied. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). First, before beginning the interrogation, the police must give the defendant the proper *Miranda* warnings. TEX. CODE CRIM. PROC. art. 38.22 § 2(a); *see Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Second, after receiving the warnings, the defendant must "knowingly, intelligently, and voluntarily" waive her rights. TEX. CODE CRIM. PROC. art. 38.22 § 2(b); *see Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612.

"Midstream *Miranda* warnings are not permissible." *Ervin v. State*, 333 S.W.3d 187, 212 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). The officer may not begin by questioning the defendant, elicit inculpatory statements, and then provide the warnings, obtain a waiver, and continue questioning. *Id.* If the officer does so, the defendant's post-warning statements, including those voluntarily made, may be held inadmissible.

To determine whether statements made after midstream warnings are admissible, the trial court must first determine whether the officer's pre-warning questioning was inadvertent or deliberate. *Carter v. State*, 309 S.W.3d 31, 32 (Tex. Crim. App. 2010). If the officer's pre-warning questioning was inadvertent, the defendant's post-warning statements are admissible as long as they were knowingly and voluntarily made. *Id.*; *Ervin*, 333 S.W.3d at 213. But if the officer's pre-warning questioning was deliberate and employed as part of a two-step "question first, warn later" interrogation strategy, the officer must take "curative measures" beyond the formal *Miranda* warnings before any post-warning statement is made for that statement to be admissible. *Martinez v. State*, 272 S.W.3d 615, 626 (Tex. Crim. App. 2008); *Ervin*, 333 S.W.3d at 212–13. The curative measures "should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver." *Martinez*, 272 S.W.3d at 626 (quoting *Missouri v. Seibert*, 542 U.S. 600, 622, 124 S.Ct. 2601, 2616, 159 L.Ed.2d 643 (2004) (Kennedy, J., concurring)).

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Ervin*, 333 S.W.3d at 202. We review the trial court's factual

findings for clear error, affording almost total deference to the trial court's rulings on questions of historical fact and mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Carter*, 309 S.W.3d at 39–40; *Warren v. State*, 377 S.W.3d 9, 15 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). We review de novo the trial court's rulings on questions of law and mixed questions of law and fact that do not turn on evaluation of credibility and demeanor. *Ervin*, 333 S.W.3d at 202.

## B. The videotape of Howard's post-warning statement was admissible

■ At the hearing on Howard's motion to suppress, the trial court heard Officer Klementich's testimony and watched a videotape of his interview of Howard. Unlike the videotape presented to the jury, the videotape presented at the suppression hearing included Officer Klementich's pre-warning questioning and Howard's pre-warning statements.

Klementich testified that he had been assigned to investigate fatality crashes and intoxicated driving offenses for the Houston Police Department's Vehicular Crime Division. On the day of the accident, he was called to the scene and photographed the crash. His supervisor then asked him to go to the hospital and interview the three occupants of the vehicle that had caused the accident.

Klementich arrived at the hospital, identified Franklin, Howard, and Gonzalez as the three occupants of the vehicle, and proceeded to interview them one at a time to gain an "understanding of what had occurred." As his job focused on fatality crashes and intoxicated driving offenses, his "primary" concern was to determine whether Franklin had been driving while intoxicated.

After he obtained Franklin's consent to draw a blood sample, Klementich interviewed Howard. Although Howard was in the custody of the Humble Police Department, Klementich did not begin the interview by reading her the *Miranda* warnings. Instead, he began with a little over four-and-a-half minutes of general, open-ended questioning about the theft, during which time Howard made several inculpatory statements. Specifically, Howard told Klementich that she and Gonzalez had taken the shirts from the department store and that Franklin had driven the getaway car.

Klementich then paused for a moment, stopped the questioning, and told Howard that he had "kind of messed up." He told Howard that she had certain rights and that he had to read them to her. Klementich then proceeded to read Howard her *Miranda* warnings. After receiving her warnings, Howard waived her rights and continued to provide her videotaped statement.

When asked why he waited over four minutes to read Howard her *Miranda* warnings, Klementich provided the following response:

Well, to be quite frank with you, I had a mental lapse. I realized that even though I was not asking Ms. Howard questions regarding the fatality crash, she still was in custody. She was not free to leave. So, I believed that it was prudent to Mirandize her since she was in custody.

Viewed in the light most favorable to the trial court's ruling, this evidence does not show that Klementich deliberately employed a two-step "question first, warn later" interrogation strategy. Rather, it shows that he accidently began the interview with questioning, realized he had forgotten to read Howard her *Miranda* warnings when she started making inculpatory statements, then provided her the warn-

ings, obtained a valid waiver, and continued the interview. Affording almost total deference to the trial court's factual findings, we hold that the trial court did not commit clear error in finding that Klementich's pre-warning questioning was inadvertent and that Howard's post-warning statements were knowingly and voluntarily made. *Carter*, 309 S.W.3d at 39–40; *Warren*, 377 S.W.3d at 15.

Having concluded that the trial court did not err in finding that the pre-warning questioning was inadvertent, we do not reach the second step of the analysis to determine whether proper curative measures were taken. We overrule Howard's second issue.

### Conclusion

We affirm the trial court's judgment.