**David William KIMBALL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–98–205–CR.**

Court of Appeals of Texas, Waco.

July 12, 2000.

---

10. The error also rendered void even the correct withdrawal of her erroneous ruling.

558

James L. Guinan, Guinan & Guinan, Dallas, for appellant.

John W. Segrest, Crim. Dist. Atty., James Wiley, Asst. Dist. Atty., Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

**OPINION**

TOM GRAY, Justice.

David William Kimball was found guilty by a jury of the offense of Driving While Intoxicated. At trial, the prosecution's proof of all elements of the offense was uncontested with the exception of the element of intoxication. The evidence to convict him consisted of the arresting officer's testimony regarding his performance of standard sobriety tests, his own admissions, and a videotape of the traffic stop. The judgment of the trial court is affirmed.

**PROCEDURAL BACKGROUND**

Kimball was charged with the misdemeanor offense of Driving While Intoxicated. To this charge, he pled not guilty. The jury convicted him and the trial court sentenced Kimball to 90 days in jail and a $2000.00 fine plus court costs. The trial court suspended the imposition of the jail time and fine and probated the sentence for 12 months and ordered Kimball to pay $400.00 plus court costs. He appeals in nine issues.

**THE EVIDENCE**

On May 25, 1997, Kimball was stopped for investigation of driving while intoxicated by a DPS Trooper. The trooper had received a radio broadcast from the DPS Waco Communications Dispatcher that an unidentified motorist had called in information about a possible intoxicated driver. Specifically, the caller reported that the driver was headed north from Bell County, driving a white Ford pickup truck with a gray stripe, and gave the license plate number of the vehicle. The trooper proceeded to travel north on I–35. The trooper located the described vehicle. As the trooper was verifying the license plate number, the trooper testified that he saw the pickup swerve partially onto the right improved shoulder of the highway, and then swerve back into the traffic lane. At this point, the trooper activated the video camera in his car. The driver swerved onto the shoulder approximately two more times. Based on probable cause of failure to maintain a single lane, the trooper stopped the vehicle driven by Kimball.

The trooper testified that during this initial stop Kimball said that he had not been drinking. The trooper also testified that he smelled a moderate odor of an alcoholic beverage on Kimball and that his eyes were red, glassy, and bloodshot. He then asked Kimball to perform three standardized sobriety tests. These tests were designed to determine whether or not a suspect is intoxicated to the point of being impaired. After conducting the tests, the trooper concluded that Kimball was intoxicated and placed him under arrest. According to the trooper's testimony, while in the front seat of the trooper's vehicle, Kimball admitted that he had been "nursing a beer." After being taken to jail and given the statutory warnings, the trooper testified that Kimball was asked to submit a sample of his breath for alcohol concentration analysis, which he refused but made other incriminating statements. Kimball's vehicle was inventoried which resulted in the discovery of an open container of beer. At trial, the only element of DWI Kimball contested was the element of intoxication. Kimball argued that the field sobriety tests were poorly performed and improperly administered. He produced an expert witness who testified to the possible invalidity of the test due to less than ideal conditions

in the field and the length of time taken to administer the three tests. Specifically, the expert testified that the horizontal gaze nystagmus test was not administered under laboratory conditions, in that the lighting conditions were poor and the test was administered too quickly. The expert also testified that the walk-and-turn test was invalid because it was not administered on a painted line, traffic conditions were poor, and because Kimball was overweight. He further testified that the weather conditions under which the one-leg stand test was administered was poor and disputed the officer's scoring of the test.

Most of the evidence of Kimball's intoxication regarding his driving and his admissions and conduct at the scene came from the arresting officer. The events of the traffic stop, initial contact, field sobriety tests, and arrest were captured on an in-vehicle video tape in the trooper's vehicle. Pursuant to pretrial rulings of the trial court, the whole of the audio portion of the video tape was found to be inadmissible due to the very poor quality and danger of improper dual interpretation.

### ISSUE ONE—LEGAL SUFFICIENCY

■ In issue one, Kimball argues that the evidence was legally insufficient to support a conviction for the offense of. driving while intoxicated. When reviewing a claim of legal insufficiency of the evidence, we must determine, after considering all the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Johnson v. State*, 967 S.W.2d 410, 412 (Tex.Crim.App.1998); *Westfall v. State*, 970 S.W.2d 590, 595 (Tex.App.— Waco 1998, pet. ref'd). This review is the same for both direct and circumstantial evidence cases. *Green v. State*, 840 S.W.2d 394, 401 (Tex.Crim.App.1992); *see also Geesa v. State*, 820 S.W.2d 154, 159

(Tex.Crim.App.1991). Whether the evidence satisfies the *Jackson* test is a question of law. *Clewis v. State*, 922 S.W.2d 126, 132 (Tex.Crim.App.1996).

■ When viewing all the evidence, which has been summarized above, in the light most favorable to the verdict, the jury could have found the essential elements of the crime beyond a reasonable doubt and rejected Kimball's strategy to create doubt as to the element of intoxication. Thus, the evidence was legally sufficient. Kimball's first issue is overruled.

### ISSUE TWO—FACTUAL SUFFICIENCY

■ In issue two, Kimball contends that the evidence was factually insufficient to support a conviction for the offense of driving while intoxicated. If a party is attacking the factual sufficiency of an adverse finding on an issue to which they did not have the burden of proof, they must demonstrate that there is insufficient evidence to support the adverse finding. *Johnson v. State*, 23 S.W.3d 1, 10 (Tex. Crim.App. 2000).

> The complete and correct standard a reviewing court must follow to conduct a *Clewis*[1] factual sufficiency review of the elements of a criminal offense *asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. . . .*

*Id.* at 11. "Having done so, the court should set aside the verdict only if the evidence standing alone is 'so weak' as to be clearly wrong and manifestly unjust." *Johnson*, at 10. If the reviewing court determines a manifest injustice has occurred, and it would, therefore, be improper to defer to the fact finder's decision,

1. *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim. App.1996).

then the reviewing court must provide a clearly detailed explanation of that determination that takes all of the relevant evidence into consideration. *Id.* at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim. App.1997).

■ While evidence may be in conflict, it is for the jury, as trier of fact, to resolve any conflicts and inconsistencies in the evidence. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App.1982). Even where there is no conflict, the jury may give no weight to some evidence, and thereby reject part or all of a witness' testimony. *See Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App.1987). The jury is also the judge of the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim.App.1991).

■ The jury was required to find that Kimball committed the offense of driving while intoxicated beyond a reasonable doubt. Based on the evidence summarized above, the jury had before it evidence both in support of and controverting a finding that Kimball was driving while under the influence of alcohol. Based upon our review of all the evidence under the applicable standards, it was factually sufficient to support the verdict on the element of intoxication. Kimball's second issue is overruled.

ISSUE THREE—INSTRUCTION

In his third issue, Kimball contends the trial court erred in denying his motion for mistrial when the State attempted to elicit testimony concerning his request for an attorney. During examination of the State's first witness, the prosecution asked, "At any time did the defendant request permission to call an attorney?" Kimball immediately objected and the trial

court sustained the objection. Kimball then asked for a jury instruction to disregard the State's question and moved to have the question struck from the record. Both of the requests were granted, and the court gave the jury an instruction [2] to disregard the State's question. Then, Kimball moved for a mistrial which was overruled by the trial court.

■ An instruction to disregard will be presumed effective unless the facts of the case "suggest[s] the impossibility of withdrawing the impression produced on the minds of the jury." *Waldo v. State*, 746 S.W.2d 750, 754 (Tex.Crim.App.1988) (citing *Hatcher v. State*, 43 Tex.Crim. 237, 65 S.W. 97, 98 (1901); *Veteto v. State*, 8 S.W.3d 805 (Tex.App.—Waco 2000, pet. ref'd)). The effectiveness of a curative instruction is determined on a case-by-case basis. *Id.; Fletcher v. State*, 852 S.W.2d 271, 275 (Tex.App.—Dallas 1993, pet. ref'd).

■ Although not expressly adopted as exhaustive or definitive, the Court of Criminal Appeals has relied on several factors to determine whether an instruction to disregard cured the prejudicial effect. *Waldo*, 746 S.W.2d at 754. They are as follows:

1. The nature of the error;

2. The persistence of the prosecution in committing the error;

3. The flagrancy of the violation;

4. The particular instruction given;

5. The weight of the incriminating evidence; and

6. The harm to the accused as measured by the severity of the sentence.

*Id.* We shall also rely on these factors. *Veteto*, at 805; *Mendoza v. State*, 959 S.W.2d 321, 324 (Tex.App.—Waco 1997, pet. ref'd).

---

**2.** "Ladies and gentlemen, I've already instructed you that questions are not evidence and should not be considered by you for any reason. A question that's been requested and an objection sustained. Any question, wheth-

er it's this one or any other, is not evidence. The only evidence that you are to base on the ruling of this case is evidence received from sworn testimony from the witness stand or any exhibit admitted for you to consider."

▆ Applying these factors to the case at hand, any prejudice caused by the prosecution's question was cured by the trial court's instruction. The nature of the error made by the prosecution can be cured by an instruction to disregard. Nor can it be argued the prosecution was persistent in committing the error or that the violation was fragrant. The improper question was only asked once. Furthermore, the particular instruction given adequately instructed the jury not to consider the State's improper question for any purpose. Although the State's proof of intoxication was contested, the totality of the evidence corroborates the finding of Kimball's intoxication. Hence, it is unlikely the improper question affected Kimball's punishment. After reviewing the record in this case and applying the factors set out in *Veteto*, we conclude the court's instruction effectively cured the prejudicial effect, if any. Accordingly, we need not conduct a harm analysis as argued by Kimball. Kimball's third issue is overruled.

### Issue Four—Custodial Interrogation

In his fourth issue, Kimball urges that the trial court erred in admitting the post-arrest statement that he had "drank a beer" or "had been nursing a beer" because the statements were products of custodial interrogation made in the absence of *Miranda* warnings [3]; therefore, admission of the statements violated his Fifth Amendment rights. The arresting officer testified that after Kimball's arrest, Kimball was placed in the front seat of the officer's vehicle and said either "he had drank a beer" or "had been nursing a beer." This statement was admitted over objections by Kimball's counsel both at trial and two pretrial hearings.

▆ The term "custodial interrogation" can include not only express questioning of a suspect, but also any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response. *Jones v. State*, 795 S.W.2d 171, 174 (Tex.Crim.App.1990) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 307–08 (1980)). The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. *Innis*, 446 U.S. at 300–302, 100 S.Ct. 1682. Since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to the words or actions on the part of police officers which they should have known were reasonably likely to elicit an incriminating response. *Id.*

▆ *Miranda* did not hold that all statements obtained by police after a person is in custody should be considered the product of interrogation. *Innis*, 446 U.S. at 299–301, 100 S.Ct. at 1689, 64 L.Ed.2d at 307. As the Court stated in *Miranda:*

> ... Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. *The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated....* Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

*Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966) (emphasis added). Thus, it is clear the procedural safeguards established in *Miranda* are required, not when a suspect is simply taken into custody, but rather when a suspect in custody is subject to interrogation. *Innis*, 446 U.S. at 300, 100 S.Ct. at 1689, 64 L.Ed.2d at 307.

---

3. *Dickerson v. United States*, —— U.S. ——, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000); *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966).

 Kimball, who was in custody, was not subjected to express questioning when he made the "nursing a beer" statement. Thus, the issue is whether the circumstances are such that he was subjected to the "functional equivalent" of interrogation. Kimball argues that applying the rules of *Innis* to this case, the statements were made as a result of interrogation. However, reviewing the record in this case, we conclude that the circumstances of this case do not show the functional equivalent of interrogation. We hold that Kimball's statement was volunteered and did not result from "interrogation." Kimball was not deprived of his Fifth Amendment rights. Therefore, the trial court did not err in admitting the statement into evidence. Kimball's fourth issue is overruled.

## ISSUE FIVE—ADMISSION AGAINST PARTY-OPPONENT

In his fifth issue, Kimball contends that the trial court erred in allowing the admission of the officer's testimony that Kimball stated that he had "drank a beer" or had been "nursing a beer" in violation of Rule 802 regarding hearsay. TEX.R. EVID. 802. The facts pertinent to this issue are recited under the fourth issue.

 Hearsay is not admissible except as provided by statute or by other rules prescribed pursuant to statutory authority. In general, and under the Texas Rules of Evidence, admissions by a party-opponent are considered non-hearsay, rather than an exception to the general rule excluding hearsay. *Bingham v. State*, 987 S.W.2d 54, 56 n. 2 (Tex.Crim.App. 1999); *See* EDWARD W. CLEARY, MCCORMICK ON EVIDENCE § 254 (3d ed.1984). A statement qualifies as an admission by party opponent if it is offered against a party and it is the party's own statement. TEX.R. EVID. 801(e)(2).

 Statements made by a defendant after being placed under arrest, must satisfy the Miranda doctrine and the Texas Confession Statute in order to be admissible pursuant to Texas Rules of Evidence 801(e)(2). *See Miranda*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Edwards v. State*, 813 S.W.2d 572, 577–78 (Tex.App.—Dallas 1991, pet. ref'd); TEX. CODE CRIM. PROC. ANN. art. 38.22. Article 38.22, provides in pertinent part: "Nothing in this article precludes the admission of a statement made by the accused ... that does not stem from custodial interrogation ..." Thus, an oral admission against interest, which does not stem from custodial interrogation, and is given freely, voluntarily and without compulsion or persuasion, is admissible evidence against the accused.

 We note that although appellant made the statement while he was in custody, both the *Miranda* doctrine and the Texas Confession Statute were satisfied because the record shows it was not the product of a custodial interrogation, and was given freely and voluntarily, without compulsion or persuasion. Also, the statement in question was Kimball's own statement. Because the statement at issue qualified as a non-hearsay statement of a party-opponent, the court did not abuse its discretion in admitting the testimony about Kimball's statement. Thus, we overrule Kimball's fifth issue.

## ISSUE SIX—NOT HEARSAY

In Kimball's sixth issue, he complains the trial court erred in overruling his hearsay objection. On direct examination, the arresting officer testified that while in route to jail with Kimball, the officer conducting an inventory of Kimball's car called on the radio to tell him that he had found an open container of beer in Kimball's vehicle. Kimball objected on the ground that this testimony was hearsay, and the trial court overruled the objection. The arresting officer further testified that the call over the radio came immediately before Kimball made the "nursing a beer" statement. Thus, he contends the trial court erred in overruling his objection to

the recitation of the contents of the radio call from the officer that conducted the inventory of Kimball's vehicle by the officer taking Kimball to jail.

 According to Texas Rules of Evidence 801(d), hearsay is defined as an out-of-court statement offered for the truth of the matter asserted. From this definition, it is clear that an out-of-court statement not offered for the truth of the matter asserted is not hearsay. Because this testimony was not offered for the truth of the matter asserted, but rather was offered as background evidence or to show the context in which Kimball made his "nursing a beer" statement, the testimony is not hearsay and was not objectionable on that basis. Kimball's sixth issue is overruled.

ISSUE SEVEN—PRESERVATION

 In his seventh issue, Kimball argues the trial court erred in allowing the admission of testimony regarding his statements made immediately following his refusal to take the breath test in violation of Texas Rules of Evidence 802. In this case, there was no hearsay objection made at the time of this testimony. Nowhere in the record does he object at trial that the testimony was hearsay. Any complaint that the testimony was hearsay was waived. *Maloy v. State*, 990 S.W.2d 442, 445 (Tex.App.—Waco 1999); *See* Tex. R.App. P. 33.1(a). In the absence of a timely and specific objection, Kimball did not preserve this complaint for appellate review. Kimball's seventh issue is overruled.

ISSUES EIGHT AND NINE—HEARSAY AND THE SIXTH AMENDMENT CONFRONTATION CLAUSE

In his eighth issue, Kimball contends the trial court committed error by admitting the testimony of the arresting officer regarding the broadcast made by an unidentified dispatcher. Over Kimball's hearsay objection, the trial court allowed the State to admit testimony of the out-of-court conversations between the officer and an un-

identified dispatcher regarding the conversation between an unknown motorist and an unidentified 911 operator reporting a possibly intoxicated driver. The officer further testified that he told Kimball that he had stopped him because his vehicle matched the description of a vehicle that had been called in by a motorist as possibly being driven by a person who was intoxicated.

 Almost always it will be relevant for a testifying officer to relate how she happened upon the scene of a crime or accident; thus, it is permissible for her to testify that she was acting in response to "information received." "[A]n arresting officer should not be put in the false position of seeming just to have happened upon the scene, he should be allowed some explanation of his presence and conduct." EDWARD W. CLEARY, MCCORMICK ON EVIDENCE § 254 (3d ed.1984); *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex.Crim.App. 1989); *see also Jones v. State*, 843 S.W.2d 487, 499 (Tex.Crim.App.1992) (holding that, because a statement was not offered to prove the truth of the matter asserted, but to show why the officer got an arrest warrant for and arrested appellant, it was not objectionable as hearsay); *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex.Crim.App. 1995) (holding that victim's appointment book containing an entry indicating defendant had appointment with victim during time of murder was not hearsay because offered to explain how defendant became a suspect).

 In this case, the officer merely related how he initially began to suspect Kimball. Such testimony was necessary for the jury's understanding of the events which occurred before the traffic stop. As such, it was not offered for the truth of the matter asserted, but to show how and why Kimball was initially identified and followed. Therefore, we hold that the trial court did not err in admitting, over Kimball's hearsay objection, the out-of-court statements that included the details of the

information that the officer received from the dispatcher. Kimball's eighth issue is overruled.

In his ninth issue, Kimball argues the trial court erred in admitting the officer's testimony regarding the "911" call and the information from the dispatcher in violation of his right to confrontation pursuant to the Sixth Amendment of the United States Constitution. As discussed above, the statement complained of was not a hearsay statement because it was not offered for the truth of the matter asserted. Instead, the statement was offered to show the reason for the officer's actions. Hence, there was no violation of Kimball's constitutional right to confrontation. We overrule Kimball's ninth issue.

CONCLUSION

Having overruled all of Kimball's issues, we affirm the judgment of the trial court.