

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00563-CR

Richard H. **VARELA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 354648
Honorable Genie Wright, Judge Presiding

Opinion by:    Karen Angelini, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:       Karen Angelini, Justice
               Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  April 22, 2015

AFFIRMED

A jury found appellant, Richard H. Varela, guilty of "assault on a person," and the trial court assessed punishment at one year confinement, plus a fine of $1,000. In three issues on appeal, Varela asserts: (1) the evidence is legally insufficient to support the jury's finding that he committed the offense; (2) the trial court erred when it admitted statements the complainant made to police; and (3) the trial court's written judgment is not congruent with the record and should be reformed. We affirm.

**BACKGROUND**

The complainant did not testify, and the only witnesses at trial were police officers. Officer Rodney Olivarez, a detective assigned to the San Antonio Police Department Crime Scene Unit, testified he handles major crimes and family violence cases. Olivarez testified he responded to a family violence call at a house located at 3015 East Southcross. When Olivarez arrived, the complainant and two other officers were present, but Varela was not.

Olivarez described the complainant's demeanor as "visibly upset that this type of violence took place on her birthday." He said the scene was still in disarray and a little confused when he arrived. He said the scene was not "completely calm." While taking photographs of the complainant's injuries, Olivarez explained he generally only photographs visible injuries, but because he could feel a bump on the complainant's head, he photographed the area of her head where she claimed she had been injured. In addition to photographs of her head, Olivarez also photographed the red mark and swelling on her right eye and the right cheek area of her face, a cut upper lip, and scratch marks on her chest and right knee. Olivarez did not take any photographs of Varela.

Officer William Dains, a San Antonio patrol officer, testified he was dispatched to assist another officer on a call for potential family violence. When he arrived at the East Southcross house, only one other police officer, Officer Martin, was present. Dains said he went to the back of the house, while Martin went to the front of the house. When Dains heard Martin make contact with a man, Martin left the back of the house and walked around to the front porch. At Martin's request, Dains stayed on the porch with the man, who was identified as Varela. Dains could not remember the complainant's demeanor, but he described her as bruised from "some sort of recent injury," and it was "very apparent that she had just gone through some sort of traumatic

experience." Dains described Varela as initially angry, but then becoming fairly quiet. Dains said Varela had no obvious bruising.

Finally, Officer Matthew Martin, a San Antonio patrol officer, testified he was the first officer to respond to the family violence call at the East Southcross house. Martin said he heard two people yelling from inside the house as he approached the house. He said the woman sounded distraught and very upset, "almost like a—somebody whose spirit had been crushed." According to Martin, as he approached the house, he heard the woman say "look at my face[,] I can't believe you did this to my face on my birthday." Martin testified the man responded, "I can't believe you called the police. Just wait until they leave, and then see what I do to your face." When Martin knocked on the door, the woman answered. A protective sweep of the house revealed only two occupants: the woman (who is the complainant) and Varela. Martin identified the female's voice he heard as the complainant's and the male's voice as Varela's.

Martin said the complainant, who was wearing a black party dress, had injuries on her face, and was crying uncontrollably, her mascara was smeared down her face, she had a mark under her right eye, and her lip was cut. Martin placed Varela in handcuffs, escorted him outside, and asked him to wait with Officer Dains. Martin then went back inside the house, where he asked the complainant to sit down and take several deep breaths because she was hysterical. When Olivarez arrived to take photographs, Martin went outside, and placed Varela inside his patrol car. Martin saw no injuries on Varela.

Olivarez, Dains, and Martin all stated they had no personal knowledge of who hit the complainant.

## OBJECTION TO THE COMPLAINANT'S STATEMENTS

In his second issue, Varela asserts the trial court erred when it overruled his objections to the police officers' testimony about what the complainant said. Varela argues the statements were

testimonial in nature, and admitting them violated his Sixth Amendment right to confront the complainant.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Testimonial evidence is inadmissible unless (1) the witness appears at trial and is cross-examined or (2) the witness is unavailable and the defense had an opportunity to cross-examine. *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013). "[T]estimonial statements are those 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id.* (quoting *Crawford v. Washington*, 541 U.S. 36, 52 (2004)). Whether a particular statement is testimonial is a question of law. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). Accordingly, we review whether the challenged statements are testimonial *de novo*. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

In determining whether a statement is testimonial, we use the standard of the objectively reasonable declarant standing in the shoes of the actual declarant. *Id.* at 742-43. The determination does not depend on the declarant's expectations. *See Michigan v. Bryant*, 131 S. Ct. 1143, 1156 (2011) (confirming that objective inquiry is required). A statement is more likely to be testimonial if the person who heard, recorded, and produced the statement at trial is a government officer. *See Crawford*, 541 U.S. at 51.

A statement is testimonial when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Bryant*, 562 U.S. at 1157; *Davis v. Washington*, 547 U.S. 813, 822 (2006). In determining whether a statement is testimonial, we may examine whether (1) the situation was still in progress, (2) the questions sought to determine what was transpiring, (3)

the primary purpose of the interrogation was to render aid rather than memorialize a possible crime, (4) the questioning was conducted in a separate room away from the alleged attacker, and (5) the events were deliberately recounted in a step-by-step fashion. *Davis*, 547 U.S. at 829-30; *Vinson v. State*, 252 S.W.3d 336, 339 (Tex. Crim. App. 2008).

### A.     Olivarez's Testimony

First, Varela complains about Olivarez's testimony that the complainant told him about her injuries and she was upset she had been assaulted on her birthday. At trial, the State questioned Olivarez as follows:

> Q. When you photograph complainants do you only photograph visible injuries?
> A. Predominantly. [The complainant] complained of injuries on her —

At this point, defense counsel objected, and the trial court excused the jury to consider the objection. Outside the jury's presence, Olivarez explained:

> [The complainant] had identified the injuries that she had and pointed to an area on the top of her head where she also had injuries, but due to the amount of hair [sic] was unable to see. I did feel the bump on the top of her head. That's the reason why I attempted to try and take a photograph of the area, which I usually don't do if I don't feel any type of injury there. So she separated her hair as best she could and we took a photograph of that general area.
>
> . . .
>
> Q. [by defense counsel] And that was for the purposes of establishing that a crime had occurred, right?
> A. Helping me determine where the actual injuries were. Sometimes you can't see them all.

The trial court overruled Varela's objection.[1] On appeal, Varela argues there was no ongoing emergency by the time Olivarez arrived on the scene, Varela (the alleged attacker) was

---

[1] After the jury returned to the courtroom, Olivarez again stated the complainant said she was injured on her head. Although defense counsel objected, the trial court did not rule on the objection, but instead, asked the State to rephrase the question. Because counsel did not obtain a ruling on the objection, any complaint as to this statement is not preserved for our review on appeal. *See* TEX. R. APP. P. 33.1(a)(1),(2) (providing that a party must object and obtain the trial court's adverse ruling).

not present when Olivarez spoke to the complainant, and Olivarez's questions were intended to preserve past events for presentation in a future criminal case. We disagree.

The Confrontation Clause applies only to testimonial hearsay. *See Davis*, 547 U.S. at 821; *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). Statements that are properly offered and admitted not to prove the truth of the matter, but rather for a non-hearsay purpose do not implicate confrontation clause rights and are admissible under *Crawford*. *See Langham*, 305 S.W.3d at 576 ("[A]n out-of-court statement, even one that falls within [the] definition of 'testimonial' statements, is not objectionable under the Confrontation Clause to the extent that it is offered for some evidentiary purpose other than the truth of the matter asserted."); *Del Carmen Hernandez v. State*, 273 S.W.3d 685, 688-89 (Tex. Crim. App. 2008) (concluding such where co-defendant's statement to police was offered and admitted as non-hearsay to impeach co-defendant's credibility). For example, when a statement is "offered to show the reason for the [police officer's] actions," and not for the truth of the matter asserted, it is not hearsay. *Kimball v. State*, 24 S.W.3d 555, 564-65 (Tex. App.—Waco 2000, no pet.) (concluding that officer's testimony as to out-of-court conversations between officer and police dispatcher regarding conversation between unknown motorist and 911 operator regarding possible DWI was non-hearsay and its admission did not violate confrontation clause).

Because Olivarez's testimony was properly offered and admitted, not to prove the truth of the matter—that Varela committed assault—but rather for the non-hearsay purpose of explaining how and why Olivarez took a photograph of the complainant's head—she said she had a head injury he could not readily see—the statement was not hearsay, and did not implicate Varela's confrontation clause rights. *See Del Carmen Hernandez*, 273 S.W.3d at 689 (concluding statement, as non-hearsay, did not implicate right of confrontation); *see also Kimball*, 24 S.W.3d at 564-65 (concluding trial court committed no hearsay and no confrontation clause violations).

Under these circumstances, we cannot conclude the trial court erred by admitting this statement over Varela's objection.

## B.     Martin's Testimony

Next, Varela complains about Martin's testimony that the complainant said "look at my face[,] I can't believe you did this to my face on my birthday."[2] We do not believe this statement was testimonial in nature.

First, the situation was still in progress because Martin overheard the remark as he approached the East Southcross house. Martin explained that, generally, when he arrives at a scene, he approaches "at an offset angle," and ensures no one is outside or running from the location. He said when he arrived at the East Southcross house, and before Varela or the complainant knew of his presence, he could hear yelling as he approached. Second, Martin had not made any contact with the couple, much less asked any questions, when he overheard what the complainant said. In other words, the complainant was speaking to Varela, and not a police officer, about events as they were actually happening. Under these circumstances, we conclude Martin's testimony about what he overheard the complainant say as he approached the house did not implicate Varela's confrontation clause rights. *See Davis*, 547 U.S. at 827 (statement not designed to prove some past fact but to describe current circumstances requiring police assistance are nontestimonial). Accordingly, we cannot conclude the trial court erred by admitting this statement over Varela's objection.

---

[2] Varela also complains about Martin's testimony that Varela replied to the complainant, "I can't believe you called the police. Just wait until they leave, and then see what I do to your face." A police officer's in-court testimony about what the defendant said does not implicate the defendant's confrontation clause rights.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Varela asserts the evidence is legally insufficient to establish that he was the assailant. Specifically, Varela argues there were no witnesses to the alleged assault and the complainant did not testify; therefore, the jury was left with only speculation that he assaulted the complainant.

When reviewing the legal sufficiency of the evidence to support a criminal conviction, we review the evidence in the light most favorable to the verdict to determine whether a rational juror could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under this standard, we are required to defer to the jury's determination of the credibility of witnesses "and the weight to be given their testimony." *Brooks*, 323 S.W.3d at 899.

"Under the *Jackson* test, we permit juries to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). "However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Id.* "A presumption is a legal inference that a fact exists if the facts giving rise to the presumption are proven beyond a reasonable doubt." *Id.* at 16. A jury may find the element of the offense sought to be presumed exists, but it is not bound to find so. *Id.* "In contrast, an inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id.* "Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt." *Id.*

Each fact need not point directly and independently to the defendant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.*

at 13. Circumstantial evidence is as probative as direct evidence, and alone, may be sufficient to establish guilt. *Id.* We do not ask whether we believe the evidence at trial established guilt beyond a reasonable doubt; instead, we consider only whether the jury reached a rational decision. *Brooks*, 323 S.W.3d at 899.

Here, Officer Martin heard a man and a woman arguing as he approached the house; and he heard the woman say "look what you did to my face" and the man say "wait until [the police leave] and then see what I do to your face." Martin identified the man's voice as that of Varela. All three officers witnessed recent injuries to the complainant, and described her as distraught, upset, and crying. Only two people were inside the house: Varela and the complainant. Considering the totality of the circumstances and the reasonable inferences that can be drawn therefrom, we hold the evidence was legally sufficient for a rational jury to find beyond a reasonable doubt that Varela assaulted the complainant.

## WRITTEN JUDGMENT

Finally, Varela asserts the judgment in not congruent with the record and should be reformed to reflect the trial proceedings. Specifically, Varela contends (1) the judgment contains boiler plate language that he pled *nolo contendere* when he actually pled not guilty, and (2) the trial court stated at sentencing it would note in the judgment no affirmative finding of family violence, but the written judgment contains no such language. Therefore, Varela asks this court to remand the cause to the trial court with instructions to enter a correct judgment.

A supplemental clerk's record filed with this court contains a judgment that reflects Varela entered a plea of not guilty. Therefore, no remand for this purpose is necessary. As to his second complaint, the judgment states Varela is guilty of "assault bodily injury-married."[3] Varela

---

[3] On appeal, Varela does not challenge this wording.

contends remand is required for the trial court to include an affirmative finding of no family violence. The State filed a cross-appeal asserting the evidence supports an affirmative finding of family violence; therefore, the trial court was statutorily required to enter an affirmative finding on family violence, and the judgment should be reformed to include this finding.

"[I]f the court determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case." TEX. CRIM. PROC. CODE ANN. § art. 42.013 (West 2006). Thus, a trial court is statutorily required to enter an affirmative finding of family violence in its judgment, if during the guilt phase of trial, the court determines the offense involved family violence as defined by section 71.004. *Butler v. State*, 189 S.W.3d 299, 302 (Tex. Crim. App. 2006).

The Texas Family Code defines "family violence" to mean: "(1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself; [or] . . . (3) dating violence, as that term is defined by Section 71.0021." TEX. FAM. CODE ANN. § 71.004 (West 2014).

"Dating violence" means an act, other than a defensive measure to protect oneself, by an actor that: (1) is committed against a victim: (A) with whom the actor has or has had a dating relationship; or (B) because of the victim's marriage to or dating relationship with an individual with whom the actor is or has been in a dating relationship or marriage; and (2) is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the victim in fear of imminent physical harm, bodily injury, assault, or sexual assault." *Id.* § 71.0021(a). "Dating relationship" means "a relationship between individuals who have or have

had a continuing relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on consideration of: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship." *Id.* § 71.0021(b). "A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a 'dating relationship' under Subsection (b)." *Id.* § 71.0021(c).

During the guilt/innocence phase in this case, the police officers testified they responded to a "family violence" call. However, no evidence was presented about the relationship between the complainant and Varela, or whether they lived together. The Information charged Varela with the offense of "intentionally, knowingly, and recklessly caus[ing] bodily injury to another, namely: [the complainant], . . . by striking the complainant with the hand of the defendant." The Complaint stated Varela committed the offense of "[Penal Code section 22.01] Assault B/I Married/Cohab." The jury charge stated Varela was charged with the offense of "assault on a person," and the judgment states Varela was adjudged guilty of the offense of "assault bodily injury-married/ a misdemeanor."

At the end of the guilt/innocence phase, but before the sentencing phase began, the State asked for an affirmative finding of family violence. Although the trial court acknowledged the case was brought to the court as a family violence case "based on probable cause," the court repeatedly reminded the State that no evidence of the nature of the relationship was brought up at trial. The State asserted Varela had a prior arrest for "assault bodily injury, married that was dismissed in September of 2010 with the same complainant," but the court noted there was no proof the couple had been married in the past. The trial court asked for additional case law before deciding whether to make the affirmative finding.

A few days later at the sentencing hearing, the trial court, without hearing additional argument, stated that an assumption about the relationship between the parties was not sufficient for sentencing purposes. Therefore, the court announced it would not make an affirmative finding of family violence as requested by the State. The trial court apparently recognized that it was not statutorily required to make an affirmative finding of no family violence, as requested by Varela, and the court declined his request to make such a finding.[4]

On appeal, Varela cites no authority for his argument that a trial court must make an affirmative finding of no family violence, and we conclude the trial court did not err by refusing Varela's request for such a finding. Because the record contains no evidence about the nature of the relationship between the complainant and Varela, we conclude the trial court did not err by refusing the State's request to make an affirmative finding of family violence.

## CONCLUSION

We overrule all issues on appeal, and affirm the trial court's judgment.

Karen Angelini, Justice

Do not publish

---

[4] The trial court, nevertheless, stated on the record that it would "put in parentheses no affirmative finding of family violence." And, in fact, the judgment contains the parenthetical "(NO AFFV)," which may very well stand for "no affirmative finding family violence." Neither party, however, references or explains the meaning of this notation.