

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00089-CR

Jessie Jermaine **PEARSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR7768
Honorable Melisa C. Skinner, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Patricia O. Alvarez, Justice
Beth Watkins, Justice

Delivered and Filed: February 1, 2023

AFFIRMED

A jury convicted appellant Jessie Jermaine Pearson on three counts — aggravated sexual assault of a child, indecency with a child by contract, and indecency with a child by exposure. TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B), 21.11. For each count, the trial court assessed punishment at imprisonment in the Texas Department of Criminal Justice–Institutional Division for concurrent terms of forty-five and ten years and a consecutive term of twenty years. In four issues, which we construe as two, Pearson complains that the trial court erred by (1) overruling his

hearsay objections to questions posed by the State to a school district police officer and (2) sustaining the State's objections to questions he posed to a private investigator. We affirm.

## I. BACKGROUND

Pearson was indicted on one count of aggravated sexual assault of a child, one count of indecency with a child by contract, and one count of indecency with a child by exposure. C.M., the complainant; Officer Joseph Ramirez, a police officer with the San Antonio Independent School District ("SAISD"); D.M., C.M.'s mother; and Shelma Peterson, a private investigator retained by Pearson; among others,[1] testified at trial.

C.M., who was fifteen years old at the time of trial, testified that her family and Pearson's family had been close since she was approximately six years old. C.M. testified that, when she was approximately twelve years old, Pearson attempted to have vaginal intercourse with her. However, because C.M. "was being too loud", Pearson switched to anal intercourse. C.M. further testified that Pearson engaged in anal intercourse with her "quite often." In addition to anal penetration, C.M. testified that Pearson would force her to perform oral sex on him. C.M. did not tell anyone about Pearson's contact because she was scared of Pearson, elaborating that she knew Pearson "can tend to get really angry." Nevertheless, when C.M. was in the sixth grade and attending a SAISD school, law enforcement began investigating whether Pearson was sexually abusing C.M.[2]

Officer Ramirez testified that he is a certified peace officer who is employed by SAISD. He was assigned to patrol duty at the school where C.M. attended. Officer Ramirez recalled

---

[1] Pearson testified as well. However, his testimony is not relevant to our disposition. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

[2] C.M. later learned that her little sister had "told her friend about things [Pearson] did to both [C.M.] and her, and [the friend] made an outcry to a teacher."

receiving a call "[f]or a student who made an outcry." Pearson then objected to Officer Ramirez's testimony on the grounds that it "calls for backdoor hearsay" and that the State did not properly designate him as an outcry witness. The State responded by asserting that the purpose of calling Officer Ramirez was "for the nature of his investigation, how [the San Antonio Police Department ("SAPD")] became involved, how CPS became involved, the starting step." The trial court overruled Pearson's objections. Officer Ramirez then testified about how he contacted SAPD and Child Protective Services.

D.M. testified that her and Pearson's families were very close. The two families became close while D.M.'s husband at the time and Pearson's wife both served in the military, and both families were next door neighbors in military housing in Killeen, Texas. While cross examining D.M., Pearson's attorney asked:

> PEARSON: But, in fact, you allow your daughters to run around the house without underwear, don't you?
>
> D.M.: No, I do not.
>
> PEARSON: Do you remember talking to a lady named Shelma?
>
> D.M.: Who?
>
> PEARSON: Shelma.
>
> D.M.: No.

D.M. denied knowing about Pearson's sexual abuse of C.M. until the school notified her that the police and CPS needed to speak to her.

During Pearson's case-in-chief, he called Private Investigator Shelma Peterson. She testified that, as part of her private investigation, she interviewed Pearson, D.M., and a CPS investigator. Pearson, through his counsel, then asked:

PEARSON:     Okay. And in your investigation of the environment and the background of — from the State's witnesses' side, did you uncover anything concerning to you for us?

PETERSON:    I had asked [D.M.] some questions that I usually ask —

STATE:       Object as to relevance.

COURT:       What is?

PEARSON:     First of all, [D.M.] and I did not speak with Shelma.

COURT:       Well, you can ask her if she — if she's spoken to her.

PEARSON:     I did, Judge.  She just said she.

COURT:       That's the answer to that question, but anything else?

PEARSON:     There was a specific question I asked, it was denied, as well.  I can ask that question.

COURT:       See, but here's the problem.  In order for you to bring in extraneous evidence of an inconsistent statement, then the person has to be told — the person who is on the witness stand, has to be told who the statement was made to, the date that it was made, under what circumstances, and my recollection is that that was not done with [D.M.].  Only that she said she didn't talk to her.  So I don't know whether she was asked — and I could go back in my notes whether she was asked whether it was Shelma Peterson or Shelma Walton[3] at the time, because I don't know what it was, but that's my recollection of the testimony.  So in order for you to bring in extraneous evidence of a prior inconsistent statement or a prior statement, it has to be done in a very specific way.

. . .

PEARSON:     Specific statement, I recall the child was that the mother denied that she allowed her children to run around without underpants.  And just she specifically asked that and she specifically said that.

COURT:       I know, but did you say, on this date, you spoke to this —

PEARSON:     No, I did not, Judge.

COURT:       No, you did not.  And that's the predicate for opening.

---

[3] Peterson's last name changed before trial.

PEARSON: Okay.

COURT: Do you see what I'm saying [defense counsel]? Because that's the rule. She had to have been told what date the statement was made. She had to have been told exactly to whom the statement was made.

PEARSON: I did everything except the date, so —

COURT: So —

STATE: I could be wrong, absolutely. My recollection is she was asked, do you allow this to happen and she said, no. Wasn't that the extent of the testimony?

COURT: And then you asked the children, do you remember talking to — but I don't think you followed it up with the question. I'm — that's my memory. I'm sorry?

STATE: It's not in my notes as far as the date.

COURT: It is — it is probably in my notes, but that's my recollection. Go on with the testimony and I'm going on go back through my notes, but right now, stay away from that because I don't think the proper predicate was laid. Okay?

PEARSON: All right. I pass the witness.

The jury convicted Pearson on one count of aggravated sexual assault of a child, one count of indecency with a child by contract, and one count of indecency with a child by exposure. The trial court assessed punishment at imprisonment for consecutive terms of forty-five and twenty years for the aggravated sexual assault of a child and indecency with a child by contract, respectively. It also assessed punishment at imprisonment for a term of ten years, to run concurrently with the term assessed for the aggravated sexual assault of a child count. Pearson timely appeals from his judgment of conviction and sentence.

## II. DISCUSSION

### A.      Standard of Review

Both of Pearson's issues challenge the trial court's rulings as to the admissibility of evidence. An appellate court reviewing a trial court's ruling on the admissibility of evidence must utilize an abuse-of-discretion standard of review. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999). In other words, the appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred*, 15 S.W.3d at 542; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). In addition, the appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Hoyos v. State*, 982 S.W.2d 419, 422 (Tex. Crim. App. 1998); *Hardesty v. State*, 667 S.W.2d 130, 133 n. 6 (Tex. Crim. App. 1984).

### B.      Hearsay

Pearson's first two issues, as briefed, argue that the trial court erred in allowing the State to "introduce backdoor hearsay testimony concerning inadmissible sexual abuse outcry evidence" and that such admission violated Pearson's substantial rights. Properly framed against existing law, we construe Pearson's first issue as complaining that the trial court erred by overruling his hearsay objections to questions posed by the State to Officer Ramirez.

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally not admissible unless it fits into one of the exceptions provided by the Texas Rules of Evidence or other rule or statute. *See id*. at R. 802. In *Kimball v. State*, the Tenth Court of Appeals wrote:

> Almost always it will be relevant for a testifying officer to relate how she happened upon the scene of a crime or accident; thus, it is permissible for her to testify that she was acting in response to information received. An arresting officer should not

be put in the false position of seeming just to have happened upon the scene, [s]he should be allowed some explanation of [her] presence and conduct.

24 S.W.3d 555, 564 (Tex. App.—Waco 2000, no pet.) (quotation marks and citations omitted).

Officer Ramirez testified that he received a call "[f]or a student who made an outcry." The trial court may have concluded that this statement by Officer Ramirez was not offered for the truth of the matter asserted. Such a conclusion would have been supported by the testimony's context. After overruling Pearson's hearsay objection, Officer Ramirez testified about how he contacted SAPD and Child Protective Services. Under a plain reading of Rule 801 of the Texas Rules of Evidence, as elaborated by *Kimball*, we hold that the trial court did not abuse its discretion in overruling Pearson's hearsay objection. Pearson's first issue is overruled.

## C.     Relevancy

Pearson's third and fourth issues, as briefed, argue that the trial court erred in preventing his counsel from "impeaching D.M." with extrinsic evidence of a prior inconsistent statement made to Peterson. Properly framed against existing law, we construe Pearson's second issue as complaining that the trial court erred by sustaining the State's relevancy objections to questions he posed to a private investigator.

Regarding a witness's prior inconsistent statement, Rule 613(a) of the Texas Rules of Evidence provides:

> **(1)** *Foundation Requirement.* When examining a witness about the witness's prior inconsistent statement — whether oral or written — a party must first tell the witness:
>
> (A) the contents of the statement;
>
> (B) the time and place of the statement; and
>
> (C) the person to whom the witness made the statement.

**(2)** *Need Not Show Written Statement.* If the witness's prior inconsistent statement is written, a party need not show it to the witness before inquiring about it, but must, upon request, show it to opposing counsel.

**(3)** *Opportunity to Explain or Deny.* A witness must be given the opportunity to explain or deny the prior inconsistent statement.

**(4)** *Extrinsic Evidence.* Extrinsic evidence of a witness's prior inconsistent statement is not admissible unless the witness is first examined about the statement and fails to unequivocally admit making the statement.

**(5)** *Opposing Party's Statement.* This subdivision (a) does not apply to an opposing party's statement under Rule 801(e)(2).

TEX. R. EVID. 613(a).

Assuming Pearson pointedly asked D.M. whether she admitted to Peterson that she allowed C.M. and her younger sister to "run around the house without underwear", Pearson did not, as the trial court aptly noted, inform D.M. of the time and place where such statement was made. *See id*. Therefore, we conclude that the trial court did not abuse its discretion in sustaining the State's objection. *See Rivera v. State*, No. 05-19-00002-CR, 2020 WL 415932, at \*4 (Tex. App.—Jan. 27, 2020, no pet.) (mem. op., not designated for publication) (applying TEX. R. EVID. 613(a) and finding that appellant did not establish the predicate for impeaching the complainant with any prior inconsistent statements) (citing *Maya v. State*, No. 05-14-00486-CR, 2015 WL 4627218, at \*3 (Tex. App.—Dallas Aug. 4, 2015, pet. ref'd) (mem. op., not designated for publication)). Pearson's second issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH